STATE OF NORTH CAROLINA
COUNTY OF FORSYTH

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24-CVS-192

FILED
2024 JAN 10 P 3: 35
FORSYTH CO., C.S.C.
BY _____

NIGHTINGALE NURSING SERVICES
INC.,

         Plaintiff,

    v.

THE CITADEL AT WINSTON SALEM
LLC,

         Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

**COMPLAINT**

       Plaintiff Nightingale Nursing Services Inc. ("Nightingale"), complaining of the Defendant THE CITADEL AT WINSTON SALEM LLC ("The Citadel Winston Salem"), states as follows:

<u>**PARTIES, JURISDICTION AND VENUE**</u>

       1.    Nightingale is a healthcare staffing company organized as a corporation under the laws of the State of North Carolina. Its principal place of business is the State of North Carolina. Nightingale provides nursing services to nursing home facilities across North Carolina.

       2.    Upon information and belief, THE CITADEL AT WINSTON SALEM LLC is a limited liability company organized and existing under the laws of the State of North Carolina. THE CITADEL AT WINSTON SALEM LLC can be served on its registered agent, Interstate Agent Services LLC at 6047 Tyvola Glen Circle, St. 100, Charlotte, NC 28217. Upon information and belief, THE CITADEL AT WINSTON SALEM LLC operates a nursing home facility located at 1900 W 1st Street, Winston-Salem, NC 27104 (the "Facility").

       3.    This Court has jurisdiction over the parties to this action pursuant to N.C. Gen. Stat. § 1-75.4 and other applicable bases for jurisdiction.

       4.    Venue is proper pursuant to N.C. Gen. Stat. § 1-82 and other applicable bases for venue.

1

Case 1:24-cv-00112-WO-JEP    Document 3    Filed 02/14/24    Page 1 of 23

## FACTS

5.      On or about July 5, 2020, Nightingale and The Citadel Winston Salem entered into a contract in which Nightingale agreed to provide nursing services at The Citadel at Winston Salem's Facility. Further, on or about June 1, 2022, Nightingale and The Citadel Winston Salem entered into an additional contract covering the same subject matter. Both contracts (the "Agreements") provided that Nightingale would provide nursing staff to the Facility, and, in return, The Citadel Winston Salem would pay for those nursing services by providing payment pursuant to invoices submitted by Nightingale. A true and correct copy of the Agreements is attached hereto as **Exhibit A**.

6.      Under the terms of the Agreements, The Citadel Winston Salem is required to make payment to Nightingale within thirty days of receipt of an invoice by The Citadel Winston Salem. The Agreements state that if The Citadel Winston Salem fails to make timely payment, then interest may be assessed upon the unpaid invoice in the amount of one and a half percent (1.5%) per month.

7.      The Citadel Winston Salem has failed to make full and timely payment on thirty-five (35) invoices submitted by Nightingale. A true and correct list of the invoices and associated balances for which The Citadel Winston Salem has failed to make timely payment is attached hereto as **Exhibit B**.

8.      As of December 31, 2023, the outstanding balance of the unpaid invoices was $1,226,044.86, which consists of a principal of $997,728.87 and an accrued but unpaid interest of $228,315.99. Interest continues to accrue on the unpaid amounts under the terms of the Agreements at the rate of 1.5% monthly.

9.      By service of this Complaint, The Citadel Winston Salem is hereby notified pursuant to the provisions of N.C. Gen. Stat. § 6-21.2 that Nightingale intends to enforce the attorneys' fees provision contained in the July 5, 2020 Agreement. The statute provides,

however, that the attorneys' fees provision shall be unenforceable if the outstanding balance paid pursuant to the July 5, 2020 Agreement is paid in full within five (5) days from service of this Complaint.

## FIRST CLAIM FOR RELIEF
(Breach of Contract)

10.     Nightingale incorporates all prior allegations of the Complaint as if fully set forth herein.

11.     The Agreements are valid and enforceable contracts between Nightingale and The Citadel Winston Salem.

12.     The Citadel Winston Salem breached the Agreements by failing to make payment as and when due.

13.     Nightingale has been damaged by The Citadel Winston Salem's failure to pay the amounts assessed in the thirty-five invoices.

14.     Nightingale is entitled to a judgment against The Citadel Winston Salem in the principal amount of $997,728.87 and the accrued but unpaid interest of $228,315.99, plus further interest on the unpaid invoices accruing at the contract rate of one and a half percent of the balance of the unpaid invoice amount, plus reasonable attorneys' fees calculated as 15% of the outstanding balance pursuant to the July 5, 2020 Agreement.

## SECOND CLAIM FOR RELIEF
(Unjust Enrichment/*Quantum Meruit*, in the alternative)

15.     Nightingale incorporates all prior allegations of the Complaint as if fully set forth herein.

16.     In the alternative to Nightingale's claim for Breach of Contract set forth above, and to the extent this Court finds the Agreements or any parts thereof invalid, Nightingale sets forth the following Claim for Unjust Enrichment/*Quantum Meruit*.

17.     Nightingale conferred a measurable benefit upon The Citadel Winston Salem by providing nursing services for the Facility. The Citadel Winston Salem voluntarily, knowingly, and consciously accepted this benefit by placing Nightingale staff at its Facility. The Citadel Winston Salem knew, or reasonably should have known, that Nightingale expected to be compensated for providing nursing services for the Facility.

18.     The use of Nightingale staff benefitted The Citadel Winston Salem, as Nightingale staff provided nursing services at the Facility.

19.     Nightingale did not gratuitously or officiously provide nursing staff to The Citadel Winston Salem, as it reasonably expected compensation in return for providing staff for the Facility.

20.     The Citadel Winston Salem has failed to compensate Nightingale for the use of its staff. It would be unjust for The Citadel Winston Salem to have received the benefit of the services provided by Nightingale staff while failing to provide payment to Nightingale for those services.

21.     As a direct and proximate result of The Citadel Winston Salem's conduct, Nightingale is entitled to recover the reasonable value of the nursing services, which exceeds $25,000, provided to The Citadel Winston Salem for which it has not received compensation.

**WHEREFORE**, Nightingale respectfully prays that the Court:

A.     Enter judgment in favor of Nightingale Nursing Services Inc. and against THE CITADEL AT WINSTON SALEM LLC in the amount of $1,226,044.86, which consists of a principal of $997,728.87, and an accrued but unpaid interest of $228,315.99, plus further interest on the unpaid invoices accruing until judgment at the contract rate of one and a half percent of the balance of the unpaid invoice, plus reasonable attorneys' fees calculated as 15% of the outstanding balance pursuant to the July 5, 2020 Agreement;

4

B.    Tax the costs of this action against THE CITADEL AT WINSTON SALEM LLC;

C.    Award Nightingale Nursing Services Inc. post-judgment interest as allowed by law; and

D.    Grant Nightingale Nursing Services Inc. such other and further relief as the Court deems just and proper.

This the 9th day of January, 2024.

Brian D. Darer, Esq.
N.C. State Bar No. 25383
Andrew P. Tabeling
N.C. State Bar No. 58243
Parker Poe Adams & Bernstein LLP
301 Fayetteville Street, Suite 1400
Raleigh, North Carolina 27601
Telephone: (919) 828-0564
Facsimile: (919) 834-4564
briandarer@parkerpoe.com
andytabeling@parkerpoe.com
*Attorneys for Nightingale Nursing Services Inc.*

# NIGHTINGALE NURSING SERVICES INC.

P.O.BOX : 1163 CARRBORO NC 27510

Tel: 919 960 3898 Telefax: 919 960 3899

## AGREEMENT

This agreement, made this day July 5, 2020 by and between Citadel at Winston Salem LLC., North Carolina, hereinafter called the **"FACILITY"** and <u>NIGHTINGALE NURSING SERVICES INC</u>. hereinafter called **'NIGHTINGALES"**.

*Whereas*, **FACILITY** desires to make arrangements for nursing personnel to supplement the services of its staff; and

*Whereas* **NIGHTINGALES** is fully licensed as a Nursing Pool by the Department of Human Resources, Division of Facility Services and is in the business of recruiting, screening and providing Registered Nurses, Licensed Practical Nurses, Nursing Assistants and other personnel to hospitals, Nursing Hose, Long Term Care Facilities, Clinics and Community Agencies, and

*Whereas* **FACILITY** desires to enter into an agreement with the **NIGHTINGALES** to provide said services; and

*Whereas* **FACILITY** and **NIGHTINGALES** desire to provide a full statement of their respective rights, obligations and duties in connection with the provision of these services; and

*Now therefore*, in consideration of the mutual promises and considerations herein contained, both parties agree as follows:

## RESPONSIBILITIES OF NIGHTINGALES:

NIGHTINGALES shall:

1. Provide Registered Nurses, Licensed Practical Nurses and Certified Nursing Assistants("Personnel") to the **FACILITY**.

2. Provide said Personnel to the FACILITY at the rates specified in Attachment I. The rates may be changed upon giving 30 days written notice to the **FACILITY**.

3. Screen and recruit Personnel to be sent to the **FACILITY** according to **NIGHTINGALES** standard procedures which include successful c completion of an application, personal interview, testing, reference checking, criminal background check and verification of licensure/certification.

Contd..P 2/-



EXHIBIT

A

4. Ensure that all Personnel sent to the **FACILITY** have completed a health assessment and have a current negative TB test on file;

5. Maintain a personnel file on each employee which contains at least the following:

   A. Completed application identifying the employee's education, experience and skills;
   B. Verification of professional licenses and listings with the Division of Facility Services;
   C. References;
   D. Documentation of in-service training;
   E. Evidence of Annual TB Testing;
   F. Evidence of Criminal Record Check;
   G. Evidence of CPR Certification.

6. **NIGHTINGALES** will be responsible for payment to the Personnel for the hours and services rendered to the **FACILITY**. It is further agreed that **NIGHTINGALES** is an independent contractor rendering services to the **FACILITY**. Personnel of **NIGHTINGALES** shall not be considered Employees of the **FACILITY** and shall they, in any way, hold themselves out to be employees of the **FACILITY**.

7. At its own cost and expenses, procure and maintain insurance to cover the Personnel assigned under the terms of this agreement in amounts and types usually maintained by Nursing Pool Services including comprehensive general liability, professional liability and any other Workers liability insurance required by law. Comprehensive, general liability and professional liability & Workmen Comp Insurance will be maintained in the amount of not less than $ 1 million per claim and $5 million per aggregate. Certificates of insurance documenting the insurance coverage shall be provided to the **FACILITY**.

8. Submit invoice to the **FACILITY** setting forth the services performed, the person providing the services, the dates and times worked, the hours of work performed, the hourly rate and the amount due to **NIGHTINGALES**.

9. Maintain records of all financial transactions with the FACILITY. Such records shall be kept in accordance with the sound accounting practices and each transaction shall be fully documented. Such records shall be made available to the appropriate state and federal agencies for inspection or audit upon request.

Contd..P 3/-...

10. Not charge or accept any fee of gifts from a patient or patient's family for services provided to the FACILITY under this agreement.

11. Shall not assign, submit, transfer or otherwise dispose of its interest in this agreement without the prior written consent of the FACILITY.

12. NIGHTINGALES shall indemnify and hold FACILITY harmless from and against any and/all liabilities, losses, or damages, including but not limited to court costs and reasonable attorney fees, that FACILITY may suffer as a result of claims, demands, suits, settlements, costs or judgments in connection with the performance or non-performance by NIGHTINGALES of the services for residents of FACILITY or the intentional or negligent acts or omissions of NIGHTINGALE'S Personnel, employees, agents or contractors.

13. NIGHTINGALES shall indemnify and defend FACILITY from all damages arising out of NIGHTINGALES'S performance under this agreement caused by (1) any negligent act or omission or (2) willful misconduct of NIGHTINGALES, its Personnel or anyone for whose acts NIGHTINGALES may be liable to the extent authorized by the laws and constitution of North Carolina.

### Responsibilities of the Facility:

The FACILITY shall :

1. Determine the hours, scope and duration of the activities of the Personnel on each assignment;

2. Provide as much notice as possible of the dates and shifts for which Personnel will be needed. In the event of cancellation of any such requests already made, the FACILITY shall notify NIGHTINGALES as soon as possible. If the notice is Twelve (12) hours or less before the scheduled reporting time, the FACILITY will be billed for a minimum of four (4) hours of service.

3. Supervise the Personnel provided by NIGHTINGALES during the hours of assignment to the FACILITY .

4. Provide on-site orientation to the NIGHTINGALE'S Personnel regarding their roles and responsibilities, the FACILITY'S policies & procedures and the FACILITY'S medical records.

Contd...P4/-..

5. Have the right at any time to refuse Personnel referred to the **FACILITY** by NIGHTINGALES. and to remove from the premises any Personnel who, in the sole discretion of FACILITY, jeopardizes the health, safety, or welfare of any resident or the safety, reputation or the regular functions of FACILITY."

6. Pay **NIGHTINGALES** hourly fees for hours worked by its Personnel as specified in Attachment-I. Said fees shall be based on the time-slip signed by a representative of the **FACILITY** at the completion of the Personnel's shift. Payment shall be made within 30 days of receipt of the invoice sent to the **FACILITY**. In order to receive timely payment, all invoices must be submitted via email to Pdstaffing@theportopiccologroup.com Invoices not paid within 30 days will be subject to a one and one half percent monthly service charge. The FACILITY will pay NIGHTINGALES one and one half for hours worked by the Personnel in excess of 40 hours per week as regulated by the Board of Labor. Notwithstanding anything to the contrary herein, no Personnel may incur overtime without the express consent of the administrator of the facility. A 30 minute lunch break will automatically be deducted following 7.5 hours of each shift.

7. Assist in evaluating the performance of the **NIGHTINGALE'S** Personnel working on assignment for the **FACILITY.**

8. Should litigation arise for the collection of unpaid balances, the FACILITY will reimburse NIGHTINGALES for its reasonable attorneys' fees and costs if NIGHTINGALES prevails in such litigation.

9. The FACILITY may terminate this Agreement immediately, without notice, upon the occurrence of any of the following events as determined by the Client in its absolute discretion:

     i.    Any conduct of NIGHTINGALES or any Personnel which jeopardizes the health, safety, or welfare of any resident, or the safety, reputation, or the regular functions of the Client;

     ii.    The failure of NIGHTINGALES or any Personnel to provide Services as required under this Agreement;

     iii.    The suspension or revocation of any licenses or certifications required hereunder;

     iv.    The expulsion of NIGHTINGALES or any Personnel from participation in Medicare, Medicaid and/or any other government-sponsored programs, if applicable;

     v.    The death of a Personnel or the occurrence of illness or injury reasonably likely to lead to the inability of NIGHTINGALES to perform Services under this Agreement for a period in excess of thirty (30) days;

*Contd..P 5/-*

     vi.     The bankruptcy, dissolution or cessation of business by NIGHTINGALES; or

     vii.     Intoxication or use of controlled substances by any Personnel while performing duties pursuant to this Agreement if the intoxication or use of controlled substances is demonstrated by blood or chemical testing or if a Personnel refuses to submit to such testing upon the Client's request.

10.     It is the responsibility of the FACILITY to provide an orientation specifically designed for their facility including an Emergency Action Plan, Hazard Communications, Bloodborne Pathogen, Fire Prevention and Escape Routes in compliance with OHSA regulations..

### Mutual Responsibilities:

1.     Co-operate to establish an orientation program that will ensure NIGHTINGALES Personnel working for the FACILITY are aware of the essential policies and procedures of the FACILITY.

2.     Designate a person within their respective organizations who shall have responsibility for coordinating the assignment of Personnel.

3.     Consult and cooperate with each other in establishing mutually acceptable standards and procedures for selection and assignment of Personnel, handling of requests, including requests for emergency services, billing procedures and any other matters incidental to carrying out the provisions a n d purposes of this Agreement.

4.     Not discriminate against any Personnel on the basis of race, color, sex, creed, national origin or handicap.

5.     The FACILITY shall not actively recruit Personnel of NIGHTINGALES who have been assigned to work for the FACILITY. Infringement of this clause will force NIGHTINGALES to recover the administrative expenses incurred on account of recruitment, credentialing and job placement of the staff besides the compensation for the inconveniences caused to other facilities. Likewise, the staff of NIGHTINGALES and its management staff shall not actively recruit employees of the FACILITY.

Contd..P 6/-

6. <u>Fraud and Abuse Prevention and Detection</u>. NIGHTINGALES ensures that all Personnel, including management, contractors, employees and agents, are educated regarding (i) the Federal False Claims Act (31 USC 3729-33); (ii) similar state false claims laws; (iii) other federal-program administrative remedies for false claims and; (iv) the role of such laws in preventing and detecting fraud, waste and abuse in government health care programs. FACILITY takes issues regarding false claims and fraud and abuse seriously and requires all employees, management, FACILITY or agents of the company to be aware of the laws regarding fraud and abuse and false claims and to identify and report any related issues immediately to their immediate supervisor, FACILITY report or to the FACILITY's Corporate Compliance Officer.

7 <u>Protected Health Information</u>: If NIGHTINGALES receives any individually Identifiable health information of any residents of the FACILITY ("Protected Health Information of any residents of the FACILITY (Protected Health Information or "PHI" pursuant to its services hereby provided, or creates or receives a The Client acknowledges that Contractor may have certain legal record keeping and reporting requirements with respect to Services and consents to Contractor's disclosure to governmental authorities of information concerning the Client and Services provided to the Client that Contractor believes to be appropriate or necessary to fulfill such legal requirements.

8. <u>Books and Records</u>. Contractor and the Client shall maintain records of the provision of Services by Contractor under this Agreement during the term of this Agreement and for a period of up to five (5) years (or longer if state or federal law shall so require) following termination of this Agreement, and shall make available to the other, or to the Secretary of the Department of Health and Human Services, or, upon request, to the Comptroller General of the United States, or any of their duly authorized representatives, this Agreement, and any books, documents and records of such Party that are necessary to certify the nature and extent of the Services provided hereunder and the costs therefore.

**<u>Term of Agreement</u>:**

The period of this agreement shall be from 07-5-2020 to 07-05-2021 and may be renewed upon the written agreement of both parties. It may be modified or amended at any time by mutual consent of the parties and any such modification or amendment must be in writing and duly executed by all parties. Any such amendment shall be attached and become a part of this agreement.

Contd..P 7-

This agreement may be terminated without cause by either party by giving at least 30 (thirty) days written notice to the other party. All written notices affecting the termination of the agreement must be delivered by certified or registered mail or by national overnight delivery service, and if sent by national overnight delivery service as of the first weekday upon which delivery is first attempted. The date of deposit of any notice in a United States Post Office with all postage prepaid shall be deemed the date of delivery thereof. It is understood that this agreement constitutes the entire agreement between the FACILITY and NIGHTINGALES.

*IN WITNESS WHEREOF*, this agreement has been duly executed and signed by:

**CITADEL AT WINSTON SALEM LLC.**

**NIGHTINGALE NURSING SERVICES INC.**

By: _____

Mathew Varughese/President



# NIGHTINGALE NURSING SERVICES INC.
### P.O.BOX : 1163 CARRBORO NC 27510
### 5920 Willow Oak Dr. Mebane NC 27302
### Tel: 919 960 3898 Telefax: 919 960 3899

## AGREEMENT

This agreement, made this day June 01, 2022 by and between
Citadel At Winston Salem LLC, NC - hereinafter called the
"**FACILITY**" and NIGHTINGALE NURSING SERVICES INC.
hereinafter called '**NIGHTINGALES**'.

*Whereas*, **FACILITY** desires to make arrangements for nursing personnel to supplement
the services of its staff; and

*Whereas* **NIGHTINGALES** is fully licensed as a Nursing Pool by the Department of
Human Resources, Division of Facility Services and is in the business of recruiting,
screening and providing Registered Nurses, Licensed Practical Nurses, Nursing Assistants
and other personnel to hospitals, Nursing Hose, Long Term Care Facilities, Clinics and
Community Agencies, and

*Whereas* **FACILITY** desires to enter into an agreement with the **NIGHTINGALES** to
provide said services; and

*Whereas* **FACILITY** and **NIGHTINGALES** desire to provide a full statement of their
respective rights, obligations and duties in connection with the provision of these services;
and

*Now therefore*, in consideration of the mutual promises and considerations herein
contained, both parties agree as follows:

## RESPONSIBILITIES OF NIGHTINGALES:

NIGHTINGALES shall:

1. Provide Registered Nurses, Licensed Practical Nurses and Certified Nursing
   Assistants to the **FACILITY**.

2. Provide said personnel to the FACILITY at the rates specified on Page # 8. The
   rates may be changed upon giving 30 days written notice to the **FACILITY**.

3. Screen and recruit personnel to be sent to the **FACILITY** according to
   **NIGHTINGALES** standard procedures which include successful c completion of
   an application, personal interview, testing, reference checking, criminal
   background check and verification of licensure/certification.

Contd..P 2/-

4.    Ensure that all personnel sent to the **FACILITY** have completed a health assessment and have a current negative TB test on file;

5.    Maintain a personnel file on each employee which contains at least the following:

    A.    Completed application identifying the employee's education, experience and skills;

    B.    Verification of professional licenses and listings with the Division of Facility Services;

    C.    References;

    D.    Documentation of in-service training;

    E.     Evidence of Annual TB Testing;

    F.     Evidence of Criminal Record Check;

    G.    Evidence of CPR Certification.

    H.    Conduct yearly competency reviews for personnel assigned to FACILITY.

6.    **NIGHTINGALES** will be responsible for payment to the personnel for the hours and services rendered to the **FACILITY**. It is further agreed that **NIGHTINGALES** is an independent contractor rendering services to the **FACILITY**. Workers of **NIGHTINGALES** shall not be considered Workers of the **FACILITY** and they shall not, in any way, hold themselves out to be employees of the **FACILITY**.

7.    At its own cost and expenses, procure and maintain insurance to cover the personnel assigned under the terms of this agreement in amounts and types usually maintained by Nursing Pool Services including comprehensive general liability, professional liability and any other Workers liability insurance required by law. Comprehensive, general liability and professional liability Insurance will be maintained in the amount of not less than $ 1 million per claim and $5 million per aggregate. Certificates of insurance documenting the insurance coverage shall be provided to the **FACILITY**.

8.    Submit invoice to the **FACILITY** setting forth the services performed, the person providing the services, the dates and times worked, the hours of work performed, the hourly rate and the amount due to **NIGHTINGALES**.

9.    Maintain records of all financial transactions with the facility. Such records shall be kept in accordance with the sound accounting practices and each transaction shall be fully documented. Such records shall be made available to the appropriate state and federal agencies for inspection or audit upon request.

Contd..P 3/-...

10. Not charge or accept any fee of gifts from a patient or patient's family for services provided to the **FACILITY** under this agreement.

11. Shall not assign, submit, transfer or otherwise dispose of its interest in this agreement without the prior written consent of the **FACILITY.**

12. NIGHTINGALES shall indemnify, defend and hold **FACILITY** harmless from and against any and/all liabilities, losses, or damages, including but not limited to court costs and reasonable attorney fees, that **FACILITY** may suffer as a result of claims, demands, suits, settlements, costs or judgments in connection with the performance or non-performance by **NIGHTINGALES** of the services for residents of **FACILITY** or the intentional or negligent acts or omissions of such employees, agents or contractors.

13. **NIGHTINGALES** shall indemnify and defend **FACILITY** from all damages arising out of **NIGHTINGALES'S** performance under this agreement caused by (1) any negligent act or omission or (2) willful misconduct of **NIGHTINGALES**, its employees or anyone for whose acts **NIGHTINGALES** may be liable to the extent authorized by the laws and constitution of North Carolina.

14. NIGHTINGALES agrees to only supply medical professionals under this Agreement that are fully vaccinated against COVID-19. Individuals are considered fully vaccinated for COVID 19, fourteen (14) days after receipt of either a single-dose vaccine (Janssen/Johnson & Johnson) or the second dose of a two-dose primary vaccination series (Pfizer-BioNTech/Comirnaty or Moderna). NIGHTINGALES further agrees that its medical professionals will arrive to FACILITY bearing proof that he/she is fully vaccinated. If NIGHTINGALES's medical professional arrives to FACILITY without proof that he/she is fully vaccinated, the FACILITY retains the right to reject the medical professional. If the medical professional is rejected by the FACILITY for not having proof that he/she is fully vaccinated, the FACILITY will not be required to pay any costs, amounts or fees, including any portion of the scheduled shift, to NIGHTINGALES for this medical professional arriving at or being at the facility for that shift or shifts.

15. Notwithstanding anything to the contrary herein, only NIGHTINGALES and not FACILITY, will be the employer of the staff or any other employees ("Personnel") supplied to by NIGHTINGALES. The FACILITY will have no responsibility with respect to any payment owing to any employee of NIGHTINGALES (b) NIGHTINGALES will, at all times, comply with all applicable federal, state or local laws or regulations applicable to NIGHTINGALES as an employer relating to compensation, hours of work or other conditions of employment. (c) NIGHTINGALES shall be solely responsible for all contributions, taxes (state taxes, federal taxes, workers' compensation, FICA, and federal unemployment insurance) and assessments with respect to the Personnel under all federal, state and local laws (excluding sales tax) and make required and submit required tax withholdings. (d) NIGHTINGALES agrees to indemnify and hold harmless FACILITY against any liability for premiums, contributions or taxes payable under any workers' compensation, unemployment compensation, disability benefits, old age benefit or tax withholding laws for which FACILITY

Contd..P 4/-

shall be finally adjudged liable as an employer with respect to any compensation that NIGHTINGALES agreed to pay to Personnel for the performance of services pursuant to this Agreement. (e) NIGHTINGALES shall be exclusively responsible for establishing and maintaining the wages and any benefits provided to its Personnel. (f) NIGHTINGALES shall comply with the Fair Labor Standards Act, the Immigration Reform and Control Act (including proper completion and retention of 1-9 forms) and all other federal, state and local laws, ordinances, regulations and codes, including identification and procurement of required permits, certificates, approvals and inspections, and any other laws which subsequently become applicable to NIGHTINGALES or to the Personnel, in performance under this Agreement NIGHTINGALES shall act in compliance with any and all statutory and regulatory requirements for employee leaves of absence including, but not limited to the Family Medical Leave Act and the Americans with Disabilities Act. (g) NIGHTINGALES specifically grants FACILITY the right to audit and/or review any and all of its records relating to Personnel under this Agreement.

16.    Conduct yearly competency reviews for personnel assigned to FACILITY.


**Responsibilities of the Facility:**

The **FACILITY** shall :

1.    Determine the hours, scope and duration of the activities of the personnel on each assignment;

2.    Provide a guaranteed 40 hours/week, 4 week minimum assignment to the travel Professional with O/T 1.5 times over the 40 hurs/week. Notwithstanding anything to the contrary herein, no Personal may incur overtime without the express written consent of the administrator of the Facility.

3.    Supervise the personnel provided by **NIGHTINGALES** during the hours of assignment to the **FACILITY** .

4.    Provide on-site orientation to the **NIGHTINGALE'S** personnel regarding their roles and responsibilities, the **FACILITY'S** policies & procedures and the **FACILITY'S** medical records.

5.    Have the right at any time to refuse personnel referred to the **FACILITY** by NIGHTINGALES. and to remove from the premises any personnel who, in the sole discretion of FACILITY, jeopardizes the health, safety, or welfare of any resident or the safety, reputation or the regular functions of FACILITY."

6.    Pay **NIGHTINGALES** hourly fees for hours worked by its staff as specified on Page # 8. Said fees shall be based on the time-records supervised by  a representative of the **FACILITY** at the completion of the Worker's shift. NIGHTINGALES' staff must comply with the facility's time-clock regulations. Payment shall be made within 30 days of receipt of the invoice sent to the **FACILITY** , if payment is not received in 30 days period it may be be subject to a one and half percent monthly service charges.

Contd..P 5/-

In order to receive timely payment, all invoices must be submitted via email to
PORT+Source-citadelwinstonsalem@mystampli.com .

Invoices not paid within 30 days will be subject to a one and one half    percent
monthly  service   charge. The **FACILITY** will pay **NIGHTINGALES** overtime
for personnel as regulated by the Board of Labor. Notwithstanding anything to the
contrary herein, no Personnel may incur overtime without the express written consent
of the administrator of the facility.  A 30 minute lunch break will automatically be
deducted following 5.5 hours of each shift.

7.    Assist in evaluating the performance of the **NIGHTINGALE'S** personnel working
on assignment for the **FACILITY.**

8.    The FACILITY may terminate this Agreement immediately, without notice, upon
the occurrence of any of the following events as determined by the Client in its
absolute discretion:

i.    Any conduct of NIGHTINGALES or any Personnel which
jeopardizes the health, safety, or welfare of any resident, or the safety,
reputation, or the regular functions of the Client;

ii.    The failure of NIGHTINGALES or any Personnel to
provide Services as required under this Agreement;

iii.    The suspension or revocation of any licenses or
certifications required hereunder;

iv.    The expulsion of NIGHTINGALES or any Personnel from
participation in Medicare, Medicaid and/or any other government-sponsored
programs, if applicable;

v.    The death of a Personnel or the occurrence of illness or
injury reasonably likely to lead to the inability of NIGHTINGALES to perform
Services under this Agreement for a period in excess of thirty (30) days;

vi.    The bankruptcy, dissolution or cessation of business by
NIGHTINGALES; or

vii.    Intoxication or use of controlled substances by any
Personnel while performing duties pursuant to this Agreement if the intoxication
or use of controlled substances is demonstrated by blood or chemical testing or if
a Personnel refuses to submit to such testing upon the Client's request.

Contd..P 6/-

9. It is the responsibility of the **FACILITY** to provide an orientation specifically designed for their facility including an Emergency Action Plan, Hazard Communications, Bloodborne Pathogen, Fire Prevention and Escape Routes in compliance with OHSA regulations..

## Mutual Responsibilities:

1. Co-operate to establish an orientation program that will ensure NIGHTINGALES personnel working for the **FACILITY** are aware of the essential policies and procedures of the **FACILITY**.

2. Designate a person within their respective organizations who shall have responsibility for coordinating the assignment of personnel.

3. Consult and cooperate with each other in establishing mutually acceptable standards and procedures for selection and assignment of personnel, handling of requests, including requests for emergency services, billing procedures and any other matters incidental to carrying out the provisions a n d purposes of this agreement.

4. Not discriminate against any personnel on the basis of race, color, sex, creed, national origin or handicap.

5. The **FACILITY** shall not actively recruit staff of **NIGHTINGALES** who have been assigned to work for the **FACILITY**. Infringement of this clause will force **NIGHTINGALES** to recover the administrative expenses incurred on account of recruitment, credentialing and job placement of the staff besides the compensation for the inconveniences caused to other facilities. Likewise, the staff of **NIGHTINGALES** and its NIGHTINGALES management staff shall not actively recruit employees of the **FACILITY**.

6. Fraud and Abuse Prevention and Detection. Contractor ensures that all Providers, including management, contractors and agents, are educated regarding (i) the Federal False Claims Act (31 USC 3729-33); (ii) similar state false claims laws; (iii) other federal-program administrative remedies for false claims and; (iv) the role of such laws in preventing and detecting fraud, waste and abuse in government health care programs. Contractor takes issues regarding false claims and fraud and abuse seriously and requires all employees, management, contractors or agents of the company to be aware of the laws regarding fraud and abuse and false claims and to identify and report any related issues immediately to their immediate supervisor, Contractor report or to the Contractor's Corporate Compliance Officer.

Contd..P 7/-

7.  **Protected Health Information.** If Contractor receives any individually identifiable health information of any residents of the Client ("Protected Health Information" or "PHI") pursuant to its Services hereby provided, or creates or receives any PHI on behalf of the Client, Contractor and Provider shall maintain the security and confidentiality of such PHI as required of the Client by applicable laws and regulations, including the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the Health Information Technology for Economic and Clinical Health Act ("HITECH") and the regulations promulgated thereunder and shall comply with the provisions. The Client acknowledges that Contractor may have certain legal record keeping and reporting requirements with respect to Services and consents to Contractor's disclosure to governmental authorities of information concerning the Client and Services provided to the Client that Contractor believes to be appropriate or necessary to fulfill such legal requirements.

8.  **Books and Records.** Contractor and the Client shall maintain records of the provision of Services by Contractor under this Agreement during the term of this Agreement and for a period of up to five (5) years (or longer if state or federal law shall so require) following termination of this Agreement, and shall make available to the other, or to the Secretary of the Department of Health and Human Services, or, upon request, to the Comptroller General of the United States, or any of their duly authorized representatives, this Agreement, and any books, documents and records of such Party that are necessary to certify the nature and extent of the Services provided hereunder and the costs therefore.

9.  This document contains the entire agreement between the parties and supersedes any and all and contemporaneous agreements between the parties, written or oral, with respect to the transactions contemplated in this Agreement.

**Term of Agreement:**

The period of this agreement shall be from 06-01-2022 to 06-01-2023 and may be renewed upon mutul agreement every year. It may be modified or amended at any time by mutual consent of the parties and any such modification or amendment must be in writing and duly executed by all parties. Any such amendment shall be attached and become a part of this agreement.

This agreement may be terminated without cause by either party by giving at least 30 (thirty) days written notice to the other party. All written notices affecting the termination of the agreement must be delivered by certified or registered mail or by national overnight delivery service and if sent by national overnight delivery services as of the first weekday upon which delivery is first attempted. The date of deposit of any notice in a United States Post Office with all postage prepaid shall be deemed the date of delivery thereof. It is understood that this agreement constitutes the entire agreement between the **FACILITY** and **NIGHTINGALES**.

Contd..P 8/....

## *FACILITY RATES – TRAVEL ASSIGNMENTS*

| | |
|---|---|
| C.N.A. | $ 60.00/HOUR |
| Med Aide | $ 70.00/HOUR |
| L.P.N. | $ 80.00/HOUR |
| SUPERVISOR/UNIT MANAGER : $ 85.00/HOUR | |
| R.N. | $ 90.00/HOUR |

**FACILITY RATES - TRACK SCHEDULES**

| | |
|---|---|
| C.N.A. | $ 50.00/Hour |
| Med Aide | $ 60.00/Hour |
| L.P.N. | $ 70.00/Hour |
| Supervisor/Unit Manager | $ 75.00/Hour |
| R.N. | $ 80.00/Hour |

**An additional $ 22.00/hour will be charged for covid units.**

**Time and one half will be charged for NNS staff on Holidays. Holidays include New Years Day (3pm New Years Eve Day to 11 pm New Years Day, Easter, Memorial Day, Independence Day, Labor Day, Thanksgiving (11 pm the night before Thanksgiving Day, Christmas ( 3pm Christmas Eve to 7 am the day after Christmas). Except where noted, holidays encompass a 24 hour period beginning 7 am on the day of the holiday ending 24 hours later.**

**Overtime : Any staff worked over 40 hours in a week shall be paid overtime at the rate of one and half times. A 30 minute lunch break will automatically be deducted following 5.5 hours of each shift.**

*IN WITNESS WHEREOF*, this agreement has been duly executed and signed by:

THE CITADEL OF WINSTON SALEM LLC.
1900 w Ist St. Winston Salem NC 27104

By:

Name of contract staff:
(a)  Anton Hopkins/LPN
(b)  Ixchel Mendoza/LPN

**NIGHTINGALE NURSING
SERVICES INC.**

Mathew Varughese/President

| Citadel of | Inv. No. | Date | | Amount | Interest @ 1.5/pm |
|---|---|---|---|---|---|
| **Winston Salem** | | | | | |
| | Citadel-73(short-paid) | 12/4/21 | 757 | $5,723.50 | $2,136.67 |
| | Citadel-74(short-paid) | 12/11/21 | 750 | $5,915.85 | $2,188.05 |
| | Citadel-75(short-paid) | 12/18/21 | 743 | $5,443.66 | $1,994.62 |
| | Citadel-76(short-paid) | 12/25/21 | 736 | $6,658.79 | $2,416.87 |
| | Citadel-77(short-paid) | 1/1/22 | 729 | $4,795.52 | $1,724.02 |
| | Citadel-78(short-paid) | 1/8/22 | 722 | $4,145.87 | $1,476.16 |
| | Citadel-93(short-paid) | 4/20/22 | 621 | $1,000.00 | $306.25 |
| | Citadel-98 | 5/16/22 | 594 | $62,257.95 | $18,237.32 |
| | Citadel-99 | 5/23/22 | 587 | $94,167.13 | $27,259.45 |
| | Citadel-100 | 5/30/22 | 580 | $90,927.02 | $26,007.62 |
| **Alliance Health Group** | Citadel-101 | 6/6/22 | 573 | $9,963.86 | $2,815.54 |
| | Citadel-102 | 6/13/22 | 566 | $24,208.62 | $6,757.19 |
| | Citadel-103 | 6/20/22 | 559 | $15,721.12 | $4,333.86 |
| | Citadel-104 | 6/27/22 | 552 | $20,017.90 | $5,449.26 |
| | Citadel-105 | 7/4/22 | 545 | $17,315.35 | $4,653.80 |
| | Citadel-106 | 7/11/22 | 538 | $14,394.70 | $3,819.13 |
| | Citadel-107 | 7/18/22 | 531 | $10,570.73 | $2,768.08 |
| | Citadel-108 | 7/25/22 | 524 | $25,361.49 | $6,553.69 |
| | Citadel-109 | 8/1/22 | 517 | $16,115.03 | $4,108.67 |
| | Citadel-110 | 8/8/22 | 510 | $21,726.59 | $5,464.39 |
| | Citadel-125 | 11/28/22 | 398 | $57,779.97 | $11,340.70 |
| | Citadel-126 | 12/5/22 | 391 | $63,707.36 | $12,284.18 |
| | Citadel-127 | 5/8/23 | 237 | $316.44 | $36.98 |
| | WR-01 | 12/12/22 | 384 | $54,648.22 | $10,348.73 |
| | WR-02 | 12/19/22 | 377 | $57,548.97 | $10,699.38 |
| | WR-03 | 12/26/22 | 370 | $54,087.35 | $9,869.09 |
| | WR-04 | 1/3/23 | 362 | $51,676.74 | $9,225.36 |
| | WR-05 | 1/9/23 | 356 | $45,170.85 | $7,930.27 |
| | WR-06 | 1/16/23 | 349 | $48,084.24 | $8,275.76 |
| | WR-07 | 1/23/23 | 342 | $34,238.60 | $5,774.60 |
| | WR-08 | 1/30/23 | 335 | $46,546.87 | $7,689.80 |
| | WR-09 | 2/6/23 | 328 | $15,957.78 | $2,581.23 |
| | WR-10 | 2/13/23 | 321 | $3,884.11 | $614.86 |
| | WR-11 | 2/20/23 | 314 | $4,678.43 | $724.45 |
| | WR-12 | 2/27/23 | 307 | $2,972.26 | $449.99 |

**EXHIBIT**

**B**

|  |  |  |  | $997,728.87 | $228,315.99 |
|---|---|---|---|---|---|
| As on 12-31-2023 |  |  | Total | **$1,226,044.86** |  |

2